Our third case for argument today is the Commodity Futures Trading Commission v. Ikkurty. Thank you, Your Honor. May it please the Court, Jason Gottlieb from Morrison-Cohen LLP, together with my partner Michael Mix, Board Defendant Appellants Sam Ikkurty and Jafia LLC. The regulatory authority of the CFTC is defined by statute, specifically the Commodity Exchange All of the CFTC's causes of action in this case depend on the connection of commodities or commodity interests as defined in the CEA. Under Section 1A.9 of the CEA, to be a commodity, a product must fall into one of many specifically enumerated products—weed, cotton, rice, corn, etc.—or be a good article, service, right, or interest in which contracts for future delivery are presently or in the future dealt in. Now, this phrase is not a catch-all, it's a catch-some. We have to figure out whether the digital assets at issue here were caught or not. And respectfully, we submit they were not, and it was an error of law below to assume that Section 1A.9 covers all of these digital assets that were in the CEA. It's hard to see how Section 1A.9 doesn't cover everything in the universe except onions and motion picture box office receipts. That is our submission, Your Honor. Our friends at the CFTC have thought differently. There are a couple of district courts around the country who have also thought differently and agreed that all digital assets somehow fall into that provision. To our awareness, this is the first time a federal appellate court has looked at this issue, and respectfully, we believe that while certain digital assets, specifically things like Bitcoin or Ethereum, do actually have futures that trade on the CME and therefore would fall under this definition. So you agree they're commodities? You agree Bitcoin and Ethereum are commodities? Yes, under this definition, I agree that they are. But what the CFTC has done, and what several district courts candidly have agreed with around the country, is what we would call a category theory. That because Bitcoin has futures that trade, and Bitcoin is a cryptocurrency, then other cryptocurrencies are basically like the same thing. They're in the same category. And as a result, all cryptocurrencies fall under this definition. But what would put Bitcoin in and take other things out of that definition? It's right there in the statute in which contracts for future delivery are presently or in the future dealt in. Bitcoin has contracts for future delivery. Different question. The first question is whether they're commodities. Then we have things like commodity pools, which the CFTC says your client was offering. And we have contracts for future delivery, futures contracts. Now, of course, the future delivery nobody takes seriously because there are futures contracts on the Standard & Poor's 500 Index. You can't deliver an index. It is a digital marker. And all the financial futures contracts are cash settled. Are you saying that the CFTC has no authority over the Standard & Poor's 500 Index futures? We're not addressing that at all, because that may be covered under other provisions in the CEA that specifically address futures contracts or other derivatives. But in this case, the district court was specifically addressing the definition of these particular cryptocurrencies under this section, under 189 of the CEA. But as I say, that defines commodity. It doesn't define future delivery. Correct. You say it's not a commodity because there isn't future delivery, but that's not the way the definition works. Respectfully, Your Honor, I believe that that is the way the definition works. It defines a commodity as goods, articles, services, rights, or interest in which contracts for future delivery are presently or in the future dealt with. Futures are a separate category that the Commodity Futures Trading Commission unquestionably has jurisdiction over. That's not the issue. The issue here is that the district court found that our client was liable for fraud in connection with trading in the spot market. And that's the real key here. Commodities that trade in the spot market, if it is a commodity, the CFTC has anti-fraud jurisdiction over that trading. But if the item in question is not a commodity under 1A9, the CFTC does not have jurisdiction over fraud in the spot market for the trading of that item. Mr. Cutley, did you preserve this argument before? The focus below was all about the fraud and that your client had not engaged in fraud, which is not something you're appealing. And I know the district court briefly addressed the question of whether or not it was a commodity, but you even included in your summary judgment briefing that although you weren't conceding that various cryptocurrencies are commodities or subject to regulation, you were going to embrace that argument for discussion, which sounds to me like you're saying, for purposes of summary judgment, we're not going to dispute that these other currencies fall within here because we're arguing about the fraud. I think the issue of whether the particular commodities or commodity interests fall within the definition was specifically raised by counsel below.  So before the district... You say it was raised. Oh, apologies. I believe before the district court, I'm looking at ECF docket number 271 at page 8, which deals with the CFTC allegations that because Bitcoin and Ether commodities, the other tokens at issue here, wrapped Bitcoin, it was also a commodity. So these issues were raised below and specifically addressed by the district court. Would you repeat the citation? It certainly should have been in your brief. Apologies for that, Your Honor. So we're looking at, for example, ECF number 271 at page 8. We will have to go and look. Apologies for that, Your Honor. So the argument was absolutely preserved below, and the judge spent quite a bit of time in the decision talking specifically about this issue of... I'm not sure I would characterize it as quite a bit of time. I agree the court addressed it, but the focus was really the fraud. I think that's correct to the extent that the judge was really focused on what she viewed as the facts of the matter. We are not contesting that on this appeal. This is a jurisdictional appeal that is an issue of law. And I think that it makes an important point, though. The CFTC has said, will say, has said many times that my client was a terrible guy, terrible fraudster, did all sorts of bad stuff. That's not the issue here. The issue is whether the CFTC had the authority to bring this action, either based on the definition of commodities or the definition of commodity interests, and whether any of the alleged fraud was in connection with those commodity interests. The CFTC's view that just because Bitcoin has a future that all cryptocurrencies and perhaps all digital assets are within the same category, and thus the CFTC has anti-fraud jurisdiction over all of it, would make the Commodity Futures Trading Commission a sort of surveillance sheriff, where they've got anti-fraud authority over anything at all other than onions and movie picture tickets. That is not what the statute says. I'm happy, actually, to reserve the remainder of my time, unless the panel has other questions right now. Yes, so far you haven't said anything about commodity pools. OK, I'll say, I'll talk about the commodities. You prevailed on that, too, in part because your client promised the investors to register as a commodity pool operator and didn't. I think that there was a promise to register as a commodity pool operator when the idea was that the fund was going to be investing in commodities. When the fund did not invest in commodities, there was no need to register as a commodity pool operator. The CFTC does not have the authority to say you should have registered as a commodity pool operator when the fund was not actually engaged in activity that would have triggered that requirement. I think it's also important to focus on anything that was in offering materials, any solicitations needed to have been in connection with any alleged fraud. And for here, we go, for this point, we go to the Supreme Court's decision in Chad Borden Park v. Choice, 2014. In that decision, which was on SLUSA, but I think both parties agree that the securities law's definition of in connection with is relevant to the commodities law's definition of in connection with. The Supreme Court explained that every securities case in which this court has found a fraud to be in connection with a purchase or sale of security has involved victims who took, tried to take, who divested themselves of, who tried to divest themselves of, or who maintain an ownership in financial instruments that fall within the relevant statutory definition. The relevant statements or omissions have to be material. Okay, let me go back and ask another version of the question, whether something was preserved in the district court. I understand your answer to my question about commodity pools to be, since these weren't commodities at all, it was necessarily unnecessary to register as a commodity pool operator. Was that argument ever made to the district judge? It certainly is not addressed. Oh, it was made, Your Honor. The argument below was that there was no requirement to register as a commodity pool operator because the funds never ended up engaging in any commodities activity. There was quite a bit of back and forth in the record below, and again, in the district court's opinion, talking about the notion of whether the particular, there are a couple of references. There's one reference to Bitcoin and materials. There's another reference to something called a crypto savings note. And there was a discussion both below between the parties and in the district court's decision about whether those items were in some way part of what triggered the commodity pool operator requirement. But what the judge did not do is find the connection, and this is what the Chad Warner Park case teaches us, the connection between those points and any alleged fraud. The Supreme Court has been pretty clear about this. There has to be a connection between any kind of solicitation or offer and what the fraud was, because otherwise, in connection with is just read too broadly. And as Justice Scalia said, anything can be in connection with anything else. I'll reserve the balance of my time. Thank you. Certainly, counsel. Mr. Metzger. Good morning. May it please the court. Mr. O'Curdy, the defendant and the appellant here, solicited investors for a crypto hedge fund, prominently touting Bitcoin and Ether as investments in the fund. In describing his experience and expertise to prospective investors in his fund, Mr. Metzger touted his personal success trading Bitcoin. In fact, he said. Mr. Gottlieb is not seeking to re-argue the question whether there was fraud. That seems quite clear, right? Mr. Gottlieb's argument is the fraud didn't concern the CFTC's subject matter. He's really saying that his client should have been criminally prosecuted by the U.S. attorney. And he doesn't seem particularly thankful that it's an agency prosecution instead. Certainly, understood. The focus was on Bitcoin and Ether, both of which the appellants concede are commodities under their reading or ours. And so that's the reason for highlighting the solicitation. And the solicitation for Bitcoin and Ether were prominent. Those were the only commodities that were mentioned in the solicitation materials. There weren't other mentions of other commodities. There was broad references to Bitcoin, the next Bitcoin, Bitcoin-like digital assets, safety and security. But certainly, Bitcoin was a focus, both of his personal experience and expertise, and Ether was as well. Those are the commodities that fit within his solicitation materials. You rely in your argument on the fact that the marketing materials for fund to advertise this 15% investment into Bitcoin. But I didn't see the particular marketing materials you're relying on in your 56.1 or admitted below. And the district court didn't address it. Is that something we can rely on? Yes, I think it is. I think that the undisputed facts in the statement that the defendants acknowledge in their responses to our statement of facts, while I don't have a specific site, they do broadly admit and acknowledge the language of the solicitation materials as well as the private placement materials and other documents and agreements. So I think that is the right place to look. There's no doubt that appellants are certainly not contesting and didn't below. And the evidence supports the language of those solicitation materials. So I think that the court can look to the defendant's responses to the plaintiff's statement of undisputed facts, which were cited to in the district court's order. And those do heavily rely, as I said, on Bitcoin. And those are the commodities that are really at issue. And the solicitation is important. Not only, I think that... I'm going to add on one question there about Fund 1 versus Fund 2. In the reply brief, the argument is that we can't turn to Fund 1 documents or can't rely on them because your focus below was only on Fund 2. How do you respond to that? Similarly, the Fund documents for Fund 2 were referenced in the plaintiff's responses to undisputed admissions of fact, undisputed in their responses to the plaintiff's statement of facts. They acknowledge the language of Fund 2, which contain similar references. Fund 2 isn't the problem. They're saying you can't rely on... That the focus was on Fund 2 representations and Fund 2 documents. And you can't rely on your arguments now about Fund 1. I think that their argument is that the district court cited Fund 1 documents and in error, in a sense, as opposed to citing some of the Fund 2 documents. But in referencing more broadly the defendant's admissions to the statement of undisputed facts, it's clear that the court is also referring to the Fund 2 materials, which do contain the solicitations, which are most important for the CFTC's commodity pool operator charges, the solicitation of investors for the purpose of investing in commodity interests, futures, options, swaps, which were present in both the Fund 1 and Fund 2 documents. So there is sufficient evidence, at least cited by the district court, even if there was some specific references to the Fund 1 language in the order. There was also a citation to the plaintiff's, the defendant's admissions in response to the CFTC's undisputed facts. And those Fund documents, back to what I was saying a moment ago, there was a lot of discussion about the fraud charge, CFTC's Rule 180.1 fraud charge, but the solicitations are also relevant to the commodity pool operator charges. And I think it's important to note that in those Fund documents, this was, these were funds that were held out as a hedge fund for digital asset and crypto investing. They were marketed to the general public at trade shows, on webinars, online. The solicitations were to invest in a safe and secure digital asset hedge fund, both in the solicitation materials, the PowerPoint that we highlight in particular, with the 15%, up to 15% in Bitcoin, as well as the marketing of crypto savings notes, which would have invested a substantial amount in put options, commodity interests, which are directly defined as commodity interests in the relevant provisions. So I think that I want to make sure that we cover both the commodities fraud portion of the district court's judgment, as well as the commodity pool operator portion. But both are, I think- What's the CFTC's position on waiver, and whether or not the defendant has waived the argument with respect to these being commodities? Yes, we do argue that they failed to raise this particular issue. Precision in making arguments and making objections is important. While they made broad references to, really with a focus on commodity interests, they didn't raise the specific argument that they are making in this court. They didn't argue that in order for the definition of commodity in the statute to be triggered, that there has to be a futures contract presently traded on that commodity. It wasn't an issue that was addressed by the court below. It wasn't an issue that was addressed by the parties. And precision is important because if it had been, obviously the parties would have briefed it, the court may have considered it. The parties could have addressed additional evidence, for example, whether the wrapped Bitcoin, some additional information about that particular digital asset and its comparability, its functional equivalence to Bitcoin, which everybody agrees has futures contracts traded on it on various exchanges, including the Chicago Mercantile Exchange and others. The parties could have looked further into and introduced additional evidence about the other digital assets that the defendants were trading, which potentially include products that have certain derivatives, swaps, or futures traded on them on various cryptocurrency exchanges. So, yes, we certainly believe that waiver is applicable to that particular argument and think that this isn't a good opportunity for the court to address that particular argument and doesn't need to address the full scope and potential limitations of the definition of commodity or commodity interests. That's also true because the facts of this case are pretty straightforward in terms of, again, I hate to repeat it, Bitcoin and Ether, but if they agree that there are Bitcoin and Ether futures contracts, if they agree that they are soliciting, they solicited investors to invest in Bitcoin and Ether as commodities, then they have acknowledged that the district court's judgment is fully supported, essentially. There's no need to explore whether these other obscure products that they ultimately traded, invested in, and lost their investors' money in are commodities or not. I think the right question is, did they solicit for Bitcoin and Ether? Absolutely. Are those commodities? Easy, yes, whether under the broad definition that we would advocate or a more narrow definition that they would advocate. And did they solicit investors for the purpose of trading commodity interests? Yes, because the fund documents contain numerous references to future swaps, options, all derivatives, all commodity interests as defined by the act. So the long and short of it is they acknowledge that the district court's judgment was supported by sufficient evidence to find liability on all three counts of the complaint, whether the failure to register as a commodity pool operator, whether fraud in connection with operating as a commodity pool operator. How do you respond to the argument? I know it was raised in the reply for the first time, that the Supreme Court's opinion in choice requires that the in connection would be with the purchase or sale of an asset if it's material to the decision. How would that factually impact this case? I don't think it impacts the case at all. Again, I'd hate to bring them up again, but Bitcoin and Ether were really the focus of the pitch. They were the focus, not only of the solicitation. What's the evidence in the record that that was material? There are references to several investors, for example, who gave some testimony and who acknowledged that the solicitation for Bitcoin was important. Bitcoin is the most recognized digital asset, I would say, the most prominent. And Mr. Akurdi advertised Bitcoin and his experience trading it and his success trading it for a reason, because it is recognizable. And several investors did indicate that they thought that his experience in trading in the past and the Bitcoin focus of the fund were things that were important. So this isn't, I think, a case where you have to go far to find the evidence that both there commodities or that it was material. The entire pitch that he made was really focused on Bitcoin. He didn't advertise any other digital asset, just general classes, including put options. And at the end of the day, he did receive millions of dollars from investors. The restitution judgment, the losses suffered by the victims were upwards of $80 million. And so it's a case where a commodity pool operator stole in a classic Ponzi-like scheme from various investors to the tune of about $80 million. And the district court's judgment supports the liability on all three of the charges. If there are no further questions. Thank you, counsel. Anything further, Mr. Gottlieb? I hope you don't need all four of those binders for a two and a half minute rebuttal. I'm a lawyer. They're my security blanket. First, I just want to quickly dispense with the waiver argument and where these sites were given. I would point the panel to our reply brief at pages five and six, where we provide the sites for the various places that these arguments were made below and where the district court addressed those arguments. Next, I'd like to talk about Bitcoin and ETH. We heard many times that the funds were primarily touting Bitcoin and ETH. But when our friend from the CFTC talked about that, he said that Mr. Ekerty said he had experience with Bitcoin. He was looking for the next Bitcoin. He was looking for something that was Bitcoin-like. These are not solicitations to purchase Bitcoin. The only reference we have in the materials is the one that Judge Saineev made reference to. And frankly, I don't really even know what that means. The record is fairly well established that the fund did not traffic in Bitcoin. It mostly purchased two cryptocurrencies called OHM, O-H-M, and KLIMA, K-L-I-M-A. There was a small amount of ETH that was purchased to use as gas fees, because in order to transact on the Ethereum network, you have to pay a little bit of ETH as gas. But as we pointed out in our papers, that would be like saying, if you drove somewhere and used gasoline in your car as those gas fees, then because gasoline is a commodity, the CFTC has jurisdiction over anything that you're going to do there. Gasoline is a commodity. There are gasoline futures contracts traded on the board of trade. Absolutely. But the CFTC, if you use your car to go do some other kind of shenanigans, the CFTC would not have jurisdiction just because you used gas in your car. Isn't there evidence that ETH was also used to buy other crypto assets? I think the record is slightly muddled, to be honest. There is some evidence that ETH was used to buy other assets because in order to get to the other assets, you had to first convert fiat money, dollars, into some sort of cryptocurrency so that you could exchange it into the cryptocurrency. That's as much as I know from the record. So again, if there's a certain amount of ETH that's purchased from some sort of transactional convenience, that would not satisfy the Chad Borden part in connection with to any of the relevant fraud. The CFTC's point here is just, it's too broad. They say that if you mention Bitcoin, everything you do after that is in connection with a commodity. And that just, that cannot be the answer here because that would give the CFTC incredibly broad jurisdiction. Thank you, counsel. The case is taken under advisement.